UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL NO. H-05-cr-270-4 |
| BONNIE GAYLE ANDREWS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending before the Court are Defendant's motion to dismiss the indictment for a

violation of the Sixth Amendment right to a speedy trial (Docket No. 215), and

Defendant's motion to suppress evidence (Docket No. 178).  After reviewing the parties'

filings and oral arguments, the evidence presented at the motion hearings held on August

25, 2006 and August 30, 2006, and the applicable law, the Court finds that both motions

should be and hereby are **DENIED.**

I.      BACKGROUND

In early 2005, the Houston Police Department ("HPD") engaged in an undercover

operation targeting Volly Bastine, a disbarred Houston attorney suspected of trafficking

in crack cocaine.  Undercover HPD officers allegedly purchased crack cocaine from

Bastine on January 6, 2005.  According to the government, Defendant Bonnie Gayle

Andrews was involved in that transaction.  Officer Shaw Reece, the HPD officer who

participated in the drug purchase while working undercover, testified that Andrews

arrived at the scene in Bastine's car.  According to Reece, Andrews used a cellular

telephone to arrange, at Bastine's request, the delivery of three ounces of cocaine, and

discussed the price of the narcotics with Reece.  At the scene of the purchase, Reece

1

testified that Andrews introduced him to Samuel Lewis, a co-defendant in this case.

Lewis allegedly showed three ounces of crack cocaine to Reece, negotiated a price, and

sold him two ounces.  Reece further testified that after the sale, Bastine and Andrews

both thanked him for the transaction and asked him for a payment in return for their

services in setting up the deal.  Reece allegedly gave forty dollars to Andrews.

In her motion to dismiss, Andrews appears to deny that she was with Bastine on

January 6, 2005 for the purpose of participating in a drug sale.  Andrews admits that she

knew Bastine through her former involvement in prostitution and that she was in

Bastine's car on that date, but states that "[s]he was there to smoke crack cocaine with

Volley and to provide a service if requested."  Def.'s Mot. to Dismiss at 2.

On June 23, 2005, Andrews was indicted for her alleged involvement in the drug

sale (Docket No. 13), along with Bastine, Lewis, and various other Defendants.  She was

arrested on June 26, 2005 on unrelated state drug charges and detained in the Harris

County jail.  On June 30, 2005, Officer Reece (accompanied by HPD Officer Donald

Deblanc and DEA Agent Terrance Bryant) visited Andrews in jail for the purpose of

questioning her about Volly Bastine and the January 6 transaction.  At the time, an

attorney had been appointed for Andrews in her state case.

Andrews admits that Officer Deblanc informed her of her *Miranda* rights and that

she initialed and signed a waiver of those rights.  Gov't Ex. 1.  Andrews further admits

that she made incriminating oral and written statements during the interview, and that

after writing her statement, she was again advised of her rights.  Gov't Ex. 2.  Andrews

agrees that she was not threatened or harmed during the interview, that the officers did

not ask any questions relating to the state charges, and that she did not request an attorney at any time.

The parties disagree, however, as to whether Andrews was informed that she had been federally indicted on charges arising from her involvement with Volly Bastine. Andrews states that she did not learn of the indictment until March 2006, but Officers Deblanc and Reece and Agent Bryant testified that they did inform her of the federal charges during the June 30 interview.  Andrews has also suggested that she was induced to cooperate in exchange for drug treatment, and that the officers misled Andrews by saying that they were not after her, but only Bastine.

On October 3, 2005, Volly Bastine died.  Andrews was arraigned on the federal drug charges on April 17, 2006, while she was still in state custody.  She now moves to dismiss the federal indictment, arguing that the delay between her indictment and her arraignment violated her Sixth Amendment right to a speedy trial.[1]  Andrews argues that, had she become aware of the indictment while Bastine was still alive, she could have obtained exculpatory testimony from him.   Andrews further moves to suppress any oral or written statements made during the June 30 interview in the Harris County jail, claiming that any waivers of her rights were involuntary.

## II.   ANALYSIS

### A.  Motion to Dismiss

The Sixth Amendment guarantees every criminal defendant the right to a speedy and public trial.  U.S. Const. amend. IV.  The Supreme Court has held that a district court evaluating a claimed speedy trial violation must balance the interests of the defendant and the public in bringing cases to trial quickly against the government's interest in bringing

---

[1] Andrews has not stated a claim under the Speedy Trial Act, 18 U.S.C. § 3161.

criminals to justice.  *Barker v. Wingo*, 407 U.S. 514, 519-20 (1972).  *Barker* established a four-factor test, under which the Court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) any prejudice to the defendant resulting from the delay.  *Id.* at 530.  The Fifth Circuit provided further guidance as to the application of the *Barker* analysis in *United States v. Frye*, 372 F.3d 729 (5th Cir. 2004).

In *Frye*, the court measured the period of time between the defendant's indictment and the ultimate trial date.  *Id.* at 737.  In this case, Andrews was indicted on June 23, 2005, and her trial is set for September 11, 2006.  This fourteen and a half-month delay triggers a full *Barker* analysis under *Frye*, as it exceeds the normal one-year guideline. *Id.*

The next question under *Frye* is whether the Court will presume prejudice from the delay in prosecution, or whether the defendant must show actual prejudice.  In order to determine whether prejudice will be presumed, the Court evaluates the first three *Barker* factors.  *Id.* at 736.  For the following reasons, prejudice will not be presumed.

First, the length of the delay does not suggest a presumption of prejudice.  Under *Frye*, "[our] Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years."  *Id.* at 737, quoting *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003).  The Court must next inquire into the reason for the delay.  It is true, as Andrews has noted, that the government has not provided an explanation for the delay in bringing Andrews promptly before the Court after her indictment, which weighs against the government.  However, *Frye* strongly suggests that the type of delay with which a district court should be

principally concerned is a deliberate attempt to gain an "*impermissible* advantage at trial." *Frye*, 372 F.3d at 738 (internal citation omitted).  In this case, there is no evidence of "the kind of willful hampering of the defense condemned in *Barker*."  *Id.*  The *Frye* court also held that "reasonable investigative delay is not the kind of delay with which the *Barker* Court was concerned."  *Id.*  Therefore, given that Andrews has not alleged any willful misconduct by the government, and considering the multi-defendant nature of the narcotics investigation in the instant case, the Court does not find that this factor weighs heavily against the government.

The third factor that the Court must evaluate for possible presumed prejudice is the diligence with which Andrews asserted her speedy trial right.  There are no clear guidelines in either *Barker* or *Frye* as to how a district court should evaluate a defendant's diligence.  However, the Court notes that Andrews did not assert her speedy trial right until August 3, 2006, almost two months after the dispositive motion deadline of June 2, 2006, without seeking an extension from the Court.  Further, it appears likely that Andrews was motivated to assert her right only after the Court dismissed the indictment, on speedy trial grounds, of a co-defendant in this case, Sylvia Braggs.  *United States v. Braggs*, No. H-05-cr-270-7, 2006 WL 1877097 (S.D. Tex. July 6, 2006).  Even so, the instant motion was filed almost a month after Braggs' indictment was dismissed.  Finally, as in *Frye*, Defendant has raised her Sixth Amendment right only in seeking a remedy (dismissal) for its claimed violation; the *Frye* court noted that "an assertion that charges be dismissed for a speedy trial violation is not a value protected under *Barker*." *Id*. at 739 (internal citation omitted).  Therefore, the Court does not find that the third factor weighs in favor of Defendant.

Because the Court declines to presume prejudice, Andrews must show actual prejudice (the fourth *Barker* factor).  Andrews claims that she has been harmed because, due to the delay in prosecution, she was not able to obtain favorable testimony from Bastine before his death in October 2005.  However, the Court finds that Andrews has fallen short of showing actual prejudice.  First, the government has disputed the claim that Bastine would provide exculpatory testimony, strongly suggesting the existence of statements made by Bastine that would incriminate Andrews.[2]  Second, there appear to be other potential witnesses (at a minimum, Officer Reece) who would likely testify that Andrews played a participatory role in the January 6 drug transaction.  Given the probable strength of the government's case against her, Andrews has not shown that she was actually prejudiced by the delay in prosecuting her case.

Because the *Barker* factors weigh against her, the Court finds that Andrews' Motion to Dismiss should be denied.  To the extent that evidence adduced at trial may affect the *Barker* analysis, the Motion can again be urged.

## B.  Motion to Suppress

Andrews also moves to suppress any oral or written statements made during her interview at the Harris County jail on June 30, 2005.  Andrews argues that her waivers of rights, including the right to counsel, were involuntary because 1) she was not informed of her federal indictment before she was questioned; and 2) the officers told her that they were only after Bastine.  Andrews also suggests that the officers coerced her statements by promising drug treatment.

First, the Court observes that Andrews' supposed ignorance of the indictment is in dispute.  Officers Deblanc and Reece and Agent Bryant all testified that Andrews was

---

[2] The government made this claim at the hearing on August 30, 2006, but did not introduce the statements.

aware of the federal charges, even if the indictment was not formally served. Further,

even if it were clear that Andrews was not informed of the charges, she would not

necessarily prevail on the claim that her waiver of counsel was involuntary.

The Supreme Court has declined to resolve explicitly the question of whether the

Sixth Amendment requires a defendant to be informed, before questioning, that he or she

has been indicted. *Patterson v. Illinois*, 487 U.S. 285, 295 n.8 (1988) ("we do not

address the question whether or not an accused must be told that he has been indicted

before a postindictment Sixth Amendment waiver will be valid. Nor do we even pass on

the desirability of so informing the accused—a matter that can be reasonably debated.").

However, in finding that the *Miranda* warnings suffice to protect a defendant's rights

during postindictment questioning, *Patterson* rejected the central holdings of the only

circuit opinion to find such a Sixth Amendment requirement.[3] "[O]nly one Court of

Appeals—the Second Circuit—has adopted substantive or procedural requirements (in

addition to *Miranda*) that must be completed before a Sixth Amendment waiver can be

effectuated for postindictment questioning. . . . As have a majority of the Courts of

Appeals, we reject *Mohabir*'s holding that some 'additional' warnings or discussions

with an accused are required in this situation." *Id.* The Second Circuit itself has

abandoned, post-*Patterson*, the notion that the Sixth Amendment requires a defendant to

be informed of the indictment before he or she may validly waive counsel. *United States

v. Charria*, 919 F.2d 842 (2d Cir. 1990).

Rather than supplement *Miranda* with further requirements in the postindictment

interrogation context, *Patterson* endorsed "a more pragmatic approach to the waiver

question—asking what purposes a lawyer can serve at the particular stage of the

---

[3] *United States v. Mohabir*, 624 F.2d 1140, 1150 (2d Cir. 1980).

proceedings in question." *Patterson*, 487 U.S. at 298. The *Patterson* Court further

opined that there is no "substantial difference between the usefulness of a lawyer to a

suspect during custodial interrogation, and his value to an accused at postindictment

questioning," and that "the role of counsel at questioning is relatively simple and

limited." *Id.* at 299-300. In the Court's view, the presence of counsel may well have

improved Andrews' legal position during the June 30 interrogation. However, the Court

must affirm that, even if Andrews "lacked 'a full and complete appreciation of all of the

consequences flowing' from [her] waiver, it does not defeat the State's showing that the

information it provided to [her] satisfied the constitutional minimum." *Id.* at 294. *See*

*also United States v. Washington*, 431 U.S. 181 (1977) (where a grand jury witness was

advised of and waived his right to remain silent, his incriminating testimony could be

used against him in a later criminal prosecution, even though defendant was unaware that

he was under suspicion). The Court finds that even if Andrews were unaware of her

federal indictment, the warnings provided to her by the officers were constitutionally

adequate and her waivers of rights were voluntary.

Andrews' assertion that she was told that Bastine was the real target also does not

suffice to render her waivers involuntary. Andrews does not allege that the officers

falsely promised her immunity from prosecution. Even if the officers had employed

deceptive techniques, the Court would look to the totality of the circumstances in

determining their effect on Andrews' waivers. *See Frazier v. Cupp*, 394 U.S. 731 (1969)

(false statement by law enforcement officers to the effect that co-defendant had confessed

was insufficient to render defendant's incriminating statements inadmissible, considering

totality of circumstances). Andrews agrees that she was advised of and waived her rights

8

twice, and that she did so without threats or other force.  She freely answered questions

regarding her involvement in the January 6 transaction, and she recognized Officer Reece

as the undercover operative with whom she allegedly interacted during the drug sale.

Andrews also has experience with both the criminal justice system in general and with

drug-related allegations in particular.  Given these factors, the Court cannot find that

Andrews' waivers of counsel during the June 30 interview were involuntary.

Defendant's invocation of *Moran v. Burbine*, 475 U.S. 412 (1986), is unavailing.

The Supreme Court held in *Moran* that a criminal defendant's waiver of counsel was

valid even when law enforcement officers failed to inform him that an attorney had called

to speak with him, writing that "[e]vents occurring outside of the presence of the suspect

and entirely unknown to him surely can have no bearing on the capacity to comprehend

and knowingly relinquish a constitutional right."  *Id.* at 422.  The Court can identify no

events or factors in the instant case that would have impermissibly diminished Andrews'

capacity to comprehend the rights that she twice relinquished.

Finally, the Court finds that the discussion of drug treatment during the June 30

interview was not impermissibly coercive.  According to Officer Reece, the officers

simply agreed with Andrews that she needed treatment; Andrews herself has not

unequivocally stated that the officers promised her treatment in exchange for her

cooperation.  A general statement by an interrogator that a defendant needs treatment,

and even a promise that he or she would undoubtedly receive it, does not necessarily

render a statement involuntary.  *E.g.*, *Hawkins v. Lynaugh*, 844 F.2d 1132 (5th Cir. 1988)

(finding a confession voluntary even where questioners made a direct promise to get

psychiatric help for defendant, when there was no direct promise of leniency).

Considering the totality of the circumstances, the discussion of drug treatment did not amount to coercion by the officers.

## III.    CONCLUSION

The Court finds that there has been no violation of Defendant Bonnie Gayle Andrews' Sixth Amendment right to a speedy trial.  Therefore, Defendant's Motion to Dismiss is **DENIED.**  The Court also finds that Andrews' statements on June 30, 2005 were not coerced, but rather voluntarily made.  Accordingly, Defendant's oral and written statements are admissible as evidence against her, and Defendant's motion to suppress this evidence is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 6th day of September, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER
SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND
AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT
ONE BY THE COURT